In re BENSEL et al., Board of Water Supply.

(Supreme Court, Appellate Division, Third Department.   March 8, 1911.)

Appeal from Special Term, Ulster County.

Application by John A. Bensel and others, as the Board of Water Supply of the City of New York, to acquire real estate under chapter 724 of the Laws of 1905, and the acts amendatory thereof, in the town of Olive, Ulster county, to provide additional water supply. From an order making an allowance to the commissioners of appraisal, applicants appeal. Modified and affirmed.

Argued before SMITH, P. J., and KELLOGG, SEWELL, HOUGHTON, and BETTS, JJ.

Archibald R. Watson, Corp. Counsel (Amasa J. Parker, Jr., of counsel), for appellants.

Joseph M. Fowler, for respondents.

PER CURIAM. Order modified, so as to allow the commissioners $100, instead of $490, as stated in the order, and, as so modified, affirmed, without costs.

BETTS, J. (dissenting). The report of the commission for which this charge of $490 for automobile hire was incurred is upon 17 parcels of land in above section in Ulster county, 6 of which were valued at $10 each, being simply a report on 11 parcels of property of any value. For automobile expenses connected with the inspection of such parcels, the commissioners have charged 26 trips, at $490. The full amount was allowed, in addition to other liberal allowances for expenses. The appeal is from the allowance for automobile expenses only.

The authority of the court to tax expenses of any kind for these commissioners, of course, must be derived from the statute. Section 32 of chapter 724 of the Laws of 1905, so far as material, provides as follows:

"The commissioners of appraisal appointed in pursuance of this act shall receive as compensation such fees and *expenses* as may be taxed by the court upon notice to the corporation counsel. * * * The corporation counsel of

the city of New York shall * * * appear for and protect the interests of the city in all proceedings in court under this act, including the taxation of fees, compensation and expenses. * * * The fees of the commissioners and the salaries and compensation of their employés and their *necessary traveling expenses*, and all *other necessary expenses*, in and about the special proceedings provided by this act, * * * shall be paid by the comptroller of the city of New York. * * * Such fees and expenses shall not be paid until they have been taxed before a justice of the Supreme Court."

Section 5 of chapter 725 of the Laws of 1905 is practically similar to the one quoted from. It will thus be seen that the traveling expenses that the court is authorized to tax are the *"necessary traveling expenses"* of the commissioners.

In this particular section the parcels of land which these commissioners were appointed to appraise begin something about half a mile from the Ulster & Delaware Railroad station at West Shokan, and extend about a mile from the place of beginning. Many trains run upon this road from Kingston, which stop at this station. The motion herein is made upon all the testimony taken and proceedings had before this commission, and included therein is a large map, which shows the distance practically as above stated, as does also much of the testimony. According to the affidavit of Oliver B. Goldsmith, a special counsel representing the corporation counsel of the city of New York, filed in opposition to the commissioners' application for compensation and expenses, a map showing the locations of the parcels allotted to this commission, showing that they are all located in or near the village of Shokan, and a short distance from the West Shokan station on the Ulster & Delaware Railroad, was attached to his affidavit, but that map is not in the printed record. West Shokan is about 16 miles from the city of Kingston, on the Ulster & Delaware Railroad. The ordinary method of travel there is by the railroad and by carriage hire or livery. The affidavit of Edward F. Joyce in the record states that the city especially objected in these cases, where the property was located near railroad stations, with livery stables convenient, and the use of automobiles was unnecessary. Mr. Fowler swears that automobiles are necessary. Mr. Joyce swears that they are not, and the city of New York objects on the ground that they are not necessary. The statute provides that expenses to be allowed shall be necessary.

1 Rev. St. c. 12, tit. 4, § 3, subd. 9, in fixing what shall be county charges, provides as follows:

"The moneys *necessarily expended* by any county officer in executing the duties of his office, in cases in which no specific compensation for such services, is provided by law."

The Court of Appeals held, in 32 N. Y. 473, 475, 476, where the question was whether certain moneys were "necessarily expended," within the intent and meaning of that statute, that:

"The import of the words 'necessarily expended' is sufficiently evident, when we consider the purpose for which they were inserted, and the nature of the subject to which they are applied. They relate * * * to the necessity of the expenditures, having reference to what is due to the public and the law, in the efficient and faithful discharge of official duty. * * * In such a connection, expenditures are to be deemed necessary, within the plain intent of the statute, when, as in the present case, they are not only needful

and proper—as contradistinguished from such as are needless and improvident—but also reasonable, appropriate, and customary in the discharge of the particular official duty."

See, also, cases there cited.

Applying that rule laid down by the Court of Appeals to the statute here and the nature of the work which this commission was called upon to do, I think the court will have no trouble in holding that such expenditures for automobiles were not "necessary expenses," within the meaning of the sections providing for the payment of the necessary traveling expenses of the commissioners. The usual and ordinary method of travel from Kingston, which is where most of the sessions of the commissions were held and where the courthouse is, would be by train to one of these stations on the Ulster & Delaware Railroad, and then by livery rig to the particular parcels sought to be inspected. That is the ordinary natural method of travel. Automobiles were not in common use in Ulster county in 1909, and are not now. These commissioners receive large pay from the city of New York, considering the amount of work done. They have already received $18,855 for compensation on three reports. In addition, they have been allowed two comparatively large bills each for traveling and other expenses on two reports prior to this one for reporting on 41 parcels of land, 6 of which parcels were reported worth $10 each.

This commission makes numerous reports (three including only 41 parcels), including only a small number of parcels in each report, which apparently has been discovered to be the way to extract the largest amount of compensation from New York City for the average number of 50 parcels of land that are contained in each section allotted to each commission. Having been allowed large compensation for their services, this commission should not include large expenses, unnecessary expenses, and ask this court to allow them against the city of New York. The city of New York should not be treated as a conquered province, or as a prey to the spoiler, simply because it is wealthy. The city of New York is not the client of this commission, nor would any Kingston lawyer, if directed to come and see his client in the Ashokan region, go there in an automobile at $25 per trip, but would go by train in the usual, ordinary, customary way. The city of New York is simply the petitioning municipality here, which has to pay the expenses of condemnation, and should be treated no differently from any other petitioning municipality, as all litigants are equal before the law and the courts.

This charge for automobiles is not by any means the only expenses allowed these commissioners on *this report*. Commissioner Fowler was allowed $93.85, which included at least three trips up the Ulster & Delaware Railroad, I assume for inspection of these same parcels; Commissioner Scanlon $120.40 for traveling and other expenses, but which are not itemized, so that the court cannot determine if any of it is for traveling up the Ulster & Delaware Railroad to the parcels in question; and Commissioner Nicoll, for traveling and other expenses, $134.16, some of which were for travel on the Ulster & Delaware Railroad. It is stated in the affidavit of one of the commission-

ers that prior to "some time in the month of July, 1909," the bills for automobile services were made out and rendered to the assistant corporation counsel, at which time—i. e., the month of July, 1909—"word went out informally that thereafter the automobile owners and garage managers would render their bills to the commissioners, who would make the charges for such cars matters of disbursements, as they would hotel bills and railroad fares." He further alleges that "no notice was given, nor was it intimated, that the city of New York would object to the payment by the city of New York for such automobile service," and that he did not know until some time during the winter of 1910 that such automobile charges would be objected to. It would seem that the fact that the assistant corporation counsel would not sanction these charges, or take charge of them himself, in July, was a fair notice to the commissioners that they must rely upon the statute and a compliance therewith for their disbursements, as well as for their compensation.

The court, or a justice thereof, and not the corporation counsel, are to allow bills for necessary expenses. There are 26 of these automobile trips charged, of which only 5 are included in "some time in the month of July, 1909"; the rest of them being later than July. There were in this report only 17 parcels passed on, 6 of which the commission has found worth only $10 each, which, of course, could not have required a great amount of examination, leaving practically 26 automobile charges, amounting to $490, for the inspection of 11 parcels of land a few miles from Kingston. Where commissioners charged with a public duty are appointed, as here, and a limit put to the kind of traveling expenses, as is shown by the statute here, the court should confine those commissioners to the kind of traveling expenses sanctioned by the statute.

In my opinion, the fact that attention was called by the assistant corporation counsel to the fact that some objection was being made to the automobile bills should have put the commissioners on their guard to comply with the statute, rather than to have them continue unauthorized and unnecessary expenditures. I think that the court should not stretch the statute to hold that "necessary traveling expenses" include that which clearly is not necessary. See In re Bensel et al., Ashokan Reservoir, Section No. 13, 124 N. Y. Supp. 716.

It follows that the order, so far as appealed from, should be reversed, with costs and disbursements.